# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**DEDRICK RICHARDSON,**

    **Petitioner,**

    **v.**

**UNITED STATES OF AMERICA,**

    **Respondent.**

        **CASE NO. 2:11-CV-479**
        **CRIM. NO. 2:06-CR-00100(3)**
        **JUDGE GEORGE C. SMITH**
        **MAGISTRATE JUDGE KING**

## REPORT AND RECOMMENDATION

On June 2, 2011, Petitioner filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 alleging that he was denied the effective assistance of counsel during plea negotiations and because Count 11 was impermissibly constructively amended by the evidence and the jury instructions. *Motion to Vacate*, Doc. No. 341. Counsel was appointed to represent Petitioner at an evidentiary hearing on the first claim and consideration of the second claim was deferred pending resolution of the first. *Report and Recommendation*, Doc. No. 361; *Order*, Doc. No. 363. An evidentiary hearing on Petitioner's first claim was held on April 22, 2013, following which the parties filed supplemental memoranda.[1]

## I.

Petitioner alleges, first, that he was denied the effective assistance of counsel during plea negotiations. Specifically, Petitioner alleges that his trial attorney, W. Joseph Edwards, failed to

---

[1] The Court granted Petitioner's motion to expand the record in support of this claim. *Order*, Doc. No. 399. These documents include a copy of the documents contained in trial counsel's file, which had been only recently located, including letters written to Petitioner by his attorney, memoranda to the file, a copy of defense counsel's letter to the United States Probation Office objecting to certain parts of the *Presentence Investigation Report,* the Court's *Statement of Reasons* for the sentence, portions of the *Presentence Investigation Report,* and a copy of the *CJA Voucher* submitted by Petitioner's trial counsel. Also included in the expanded record are copies of the transcripts of the depositions of the Assistant United States Attorneys who represented the government in this case (Timothy Prichard, David Bosley, and Kenneth Affeldt).

advise Petitioner of the strength of the government's case and that his wife, Ebony (White) Richardson, had agreed to testify against him at trial.  Petitioner claims that, had his attorney done so, he would not have proceeded to trial but would have accepted the government's plea offer.  As a result, Petitioner contends, he received a substantially greater sentence than he would have otherwise received.

### A.

The procedural history of this case has previously been recounted in detail, *Report and Recommendation,* Doc. No. 361, and will be only briefly summarized here.  Petitioner was charged in an original *Indictment*, Doc. No. 14, along with nine (9) other persons, including Alvin M. Fenderson,  Anthony L. Bell, Clarence Bell, Jr., and Ebony S. White, with various drug and gun charges.  A *Superseding Indictment* against Petitioner, Fenderson, Howard Boddie, III, Clarence Bell, Jr., and Kimyada Richardson was filed on October 12, 2006. *Superseding Indictment*, Doc. No. 122. The matter proceeded to trial by jury against Petitioner and Fenderson beginning December 14, 2006 and, on December 21, 2006, Petitioner was convicted on all counts against him:  *i.e.*, one count of conspiracy to possess with intent to distribute 50 grams or more of crack cocaine (Count 1), one count of conspiracy to possess with intent to distribute five kilograms or more of cocaine (Count 9), two counts of possession with intent to distribute 500 grams or more of cocaine (Counts 10 and 12), and possession of a firearm in furtherance of a drug trafficking crime (Count 11).[2]  *Jury Verdict*, Doc. No. 197 (sealed).  On April 11, 2007, the Court sentenced Petitioner to 232 months incarceration on the drug charges plus an additional sixty months  incarceration  on  the  firearm  charge,  to  be  served  consecutively  to  the  drug convictions. *Judgment,* Doc. No. 254. On November 10, 2009, the United States Court of

---

[2] Petitioner's co-defendant, Alvin M. Fenderson, was also convicted on all charges against him. *Jury Verdict*, Doc. No. 195 (sealed).   Fenderson's motion to vacate under 28 U.S.C. § 2255 is currently pending in this Court. Doc. No. 401.

Appeals for the Sixth Circuit affirmed the judgment of this Court. *United States v. Richardson*, 352 Fed. Appx. 47 (6th Cir. Nov. 10, 2009). The United States Supreme Court denied the petition for a writ of *certiorari. United States v. Richardson*, 130 S.Ct. 3400 (2010).  On January 10, 2012, this Court reduced Petitioner's sentence, pursuant to Petitioner's motion under 18 U.S.C. § 3582I(2), to an aggregate term of 270 months in prison. *Order*, Doc. No. 356.

**B.**

**Testimony of Trial Counsel**

Petitioner's trial counsel, W. Joseph Edwards, testified at the evidentiary hearing that his file contained the invoice for his work, memoranda to the file and letters to Petitioner. *Evidentiary Hearing Transcript*, PageID# 2445-2446.  The letters were intended to assure that Petitioner understood the seriousness of the charges against him;  the memoranda to the file reflected trial counsel's fear that Petitioner would reject the proffered plea agreement and, consequently, suffer a much more severe sentence should he be, as expected, convicted after a trial.  Edwards tried to convince Petitioner that the evidence against him was very strong and that conviction on the charges would result in an aggregate sentence of 15 or 16 years in prison; should Petitioner accept the plea offer and agree to cooperate, however, a motion under § 5K1.1,[3] for a downward departure from the sentence recommended by the United States

---

[3]  U.S.S.G. § 5K1.1 provides as follows:

Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

(a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:

(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

Sentencing Guidelines could result in an aggregate sentence of less than ten years.  PageID# 2450-51.

Edwards met with Petitioner personally on September 15, 2006 and again on October 16, 2006.  PageID# 2443.  An October 24, 2006 letter summarized their discussions during these meetings.  *Petitioner's Exhibits E1-E2*, PageID #2339-2340..  Edwards advised Petitioner that the government's plea offer required Petitioner to plead guilty to Count 10 of the *Superseding Indictment*, which carried a sentence of five to forty years, and to the firearm charge in Count 11, which carried a mandatory consecutive term of five years.  Counsel advised Petitioner that the offer  would probably result in a sentence of about eleven years.  PageID# 2457-58.  "It made no sense [to go to trial] because Count 10 . . . was like indefensible.  There was no defense to it."[4] PageID# 2495.

Edwards researched the issue of spousal privilege prior to trial. PageID # 2457-59. According to Edwards, Petitioner understood that his wife could testify against him.  PageID #2455.  However, Ebony White is not mentioned in any of Edwards' notes to the file or letters, except in regard to Fourth Amendment issues.  PageID #2456-57, 2459.

Petitioner told Edwards that he would plead guilty to the drug charge in Count 10 if the government agreed to dismiss the § 924I gun charge in Count 11.  PageID #2458.  Edwards relayed that offer to the government, which would not agree to the dismissal of the § 924I gun charge.  PageID #2459.

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5) the timeliness of the defendant's assistance.

[4]  Edwards' defense strategy consisted of admitting guilt to the drug charge in Count 10, because there was  no defense to that charge.  PageID #2495.  "So my thought was why would you go to trial when you know what they're offering you we're going to admit to."  *Id.*  Petitioner testified that he agreed with this strategy.  PageID #2439, #2561.

A proffer of Petitioner was attempted on November 15, 2006, but Petitioner refused to provide information against co-defendant Fenderson.  PageID #2459-60; 2486.

In a letter to Petitioner dated December 5, 2006, Edwards indicated that Petitioner had agreed to plead guilty to Count 10 in exchange for a recommended sentencing range of 87 to 108 months incarceration "in a range of level 29 [with] a criminal history category of two."  PageID #2463-64; 2477.[5]  The government was "not happy," but promised to get back to Edwards.  On December 11, 2006, Edwards and Petitioner met again and discussed the potential testimony of co-defendants Clarence Bell and Boddie.  PageID# 2453.[6]

By December 13, 2006, the government was insisting that any plea agreement include Petitioner's cooperation against co-defendant Fenderson.  *Id.;* PageID # 2493.  Petitioner's sentences would fall in the range of 100 to 115 months.  Edwards concluded that this offer

---

[5] Edwards' December 5, 2006, letter to Petitioner, *Petitioner's Exhibit E10-11,* PageID #2353-2355, indicates that Edwards met with Petitioner on November 28, 2006, and on December 5, 2006, and spoke to him twice by telephone.  On November 28, 2006, Petitioner was transported to the Court for a pre-trial conference.  On each occasion, Petitioner was told that conviction following trial could result in a sentence of well over 25 years. Petitioner refused to plead guilty even though he acknowledged that he would be convicted at trial.  *Id.*  On December 5, 2006, Edwards again advised Petitioner to plead guilty because, under the best of circumstances, he would be convicted on Count 10, *i.e.*, possession with intent to distribute 2 kilograms or more of cocaine, and would fall into a sentencing range of 108 to 135 months, "the exact offer the prosecution has made to you."  *Id.*  Proceeding to trial would deny Petitioner the benefit of acceptance of responsibility.  The deal offered by the government did not require Petitioner to cooperate or testify against Fenderson. Although Petitioner had earlier expressed a willingness to accept such an offer, he refused to plead guilty under those terms.  Edwards again explained that Petitioner had no defense to Count 10, again warned Petitioner of the risks of proceeding to trial,  and again advised Petitioner to accept the plea offer. *Id.*

[6] Edwards' December 11, 2006, memo to his file indicates that he met with Petitioner at the Franklin County Jail for approximately 30 minutes. *Petitioner's Exhibit E12-14,* PageID #2350-52.  Petitioner had refused to discuss the charges against him with Edwards and maintained his innocence "on all but Count 11" [sic].  PageID # 2352. Petitioner provided the names of no defense witnesses and insisted that all witnesses against him were lying.  *Id.* Petitioner understood that conviction after a trial could result in a sentence ranging from 15 to 25 years in prison. PageID # 2352.  Edwards discussed the prosecution's offer to dismiss the firearm charge and a number of other charges in exchange for a plea of guilty to a charge carrying a sentencing guideline range of 108 to 135 months. Edwards also suggested that the U.S. Attorney's Office might be willing to agree to a recommended sentencing range of 91 to 121 months, which would equate to an offense level of 29 and a criminal history category of II. Edwards recommended that Petitioner  accept the offer because his opening statement would admit Petitioner's guilt on Count 10 and, based on the amount of cocaine involved and the involvement of a firearm, Petitioner could face a sentencing range of 108 to 135 months.  Since this range was the same as that offered by the prosecution, Edwards believed that going to trial would do nothing more than risk a worse outcome.  *Id.* at PageID # 2351.  Petitioner initially refused to enter a guilty plea, PageID # 2350, but by the end of the meeting agreed to "accept a plea of guilty to a sentencing range of 87 to 108 months."  PageID # 2351.  However, the prosecution "did not seem pleased with Mr. Richardson's position."  *Id.*

"could  result actually in a better sentence than the previous offer of 108 to 135 months" because it would include a reduction for cooperation.  *Id*.  Petitioner rejected the offer.  PageID #2494.

At the evidentiary hearing, Edwards recalled a meeting with Petitioner and government attorneys in the courtroom to again discuss a negotiated guilty plea; Petitioner and Edwards also discussed Petitioner's wife's potential testimony against him.[7]  At that point, the government's earlier plea offer was no longer open and the government instead offered a plea agreement based on a sentencing range of 108 to130 months without cooperation.  PageID #2487.  This plea offer is reflected in Edwards' memo to the file dated December 19, 2006.[8]  *Petitioner's Exhibit E18-20.*  Petitioner understood that White would testify as a prosecution witness and that she had signed a very favorable plea agreement.  Indeed, Assistant United States Attorney Bosley expressly told Edwards in front of Petitioner that White would testify.  PageID #2494-95.  The government also reviewed with Petitioner the evidence against him.  PageID #2495.  Petitioner rejected the offer.  PageID #2488.

Sometime between November 28 and December 13, 2006, Edwards obtained *Jencks* material, which included Ebony White's plea agreement and a transcript of her grand jury testimony.  PageID #2488.  Although Petitioner had insisted that his wife would not testify against him,  PageID #2470; 2489,  Edwards understood, based on the extremely favorable terms of that plea agreement, that she would testify against Petitioner.  *Id.;* PageID #2488-89.

---

[7] Edwards testified that this meeting took place on November 28, 2006, in connection with a pre-trial conference. PageID #2486-87.

[8]  Edwards' December 19, 2006 memorandum to the file, *Petitioner's Exhibit E18 – 20,* PageID # 2356-2358, indicates that, on December 13, 2006, Petitioner was brought into the courtroom to discuss settling the case. Petitioner appeared willing to plead guilty, but the government's prior offer of 108 to 135 months without cooperation was no longer available.  Instead, the U.S. Attorney's Office presented an offer that contemplated a plea of guilty to Count 1 and full cooperation against co-defendant Fenderson.  Edwards calculated that this offer would result in a sentence of between 100 and 115 months.  Edwards "[l]iterally. . . begged [Petitioner] to take the deal and resolve his case because he was on a collision course with disaster."  *Id*., PageID #2356.  Petitioner nevertheless refused the offer.  Trial began the following day*, i.e*., December 14, 2006, and the government renewed its most recent offer at a meeting with Petitioner that evening.  Petitioner indicated that he had information regarding Fenderson, but would agree to cooperate only if he were offered a better deal.  *Id.*  "I told Mr. Richardson that the deal would not get better, and he simply told the prosecutors "to shove it.'"

> [T]he minute I saw her plea agreement, it was one of the most unbelievable plea agreements I've ever seen.  It was so beneficial to her. . . . [M]y first thought was she's essentially walking on a potential conspiracy case.  I mean, it was that good.
>
> I remember talking to Mr. Richardson about her plea agreement.  I said, "Look, she's going to testify.  She has to testify.  If she doesn't testify, she is not going to get a 5K, this thing is going to be ripped up, and she's going to go to federal prison."  I remember telling him that, she's going to testify.

PageID #2489-90.  Edwards advised Petitioner on December 13, 2006 that the government had withdrawn its offer of 108 to 135 months without cooperation.  PageID #2469.  The government was now offering a plea agreement that contemplated a plea of guilty to the conspiracy charge in Count 1, which carried a 10 year to life term of imprisonment, and Petitioner's testimony against co-defendant Fenderson.    PageID #2466-67.[9]    Petitioner rejected any deal that required cooperation with the government, and particularly against Fenderson, who was Petitioner's cousin as well as co-defendant. PageID #2467-68.

Edwards attempted to persuade Petitioner to accept every plea offer made by the government.  PageID #2473.  "This was a case where I was trying to come up with any kind of meeting of the minds between my client and the government.  I wanted to resolve this case.  I did not want it to go to trial."  PageID #2474.

Throughout the entire plea negotiations phase, the government's consistent and unwavering position was that Petitioner should serve approximately ten years in prison.  PageID #2483, # 2485. Edwards could neither understand nor explain Petitioner's refusal to accept a plea agreement:

---

[9] Edwards' December 13, 2006, letter to Petitioner indicates that Edwards met with Petitioner on December 11, 2006 and spoke with him regarding the urgency of considering the government's plea offer.  The government offered a sentencing guideline range of 108 to 135 months.  Addressing Petitioner's complaint that Edwards was not zealously representing Petitioner, Edwards denied that he feared trial but he urged Petitioner to take the offer because he feared that Petitioner would spend 20 to 25 years in prison if, as was likely, he were convicted at trial.  Edwards advised Petitioner that the case could be resolved without trial with a sentence of about 11 to 12 years.  *Petitioner's Exhibit E15 – 17,* PageID #2353-2355..

> I just got a sense that there was really no explanation as to why he did not want to do it, which I think continually frustrated me, which is why I think I was continually so persistent because I never had from him a valid explanation as to why he wouldn't accept the government's offer.

PageID #2516.

> It's not that he doesn't understand the 5K or he doesn't understand the guidelines. He understands everything. He understands the evidence against him. It's just the fact that he doesn't want to cooperate. He doesn't want maybe that label. . . . [T]here was something about him that he just didn't want to cooperate with the government.
>
>       \*      \*      \*
>
> [I]t was just a situation where I was comfortable that Mr. Richardson understood the evidence, the charges, the guidelines. He understood the evidence. He understood my counsel. And that although he was taking this matter seriously, just balancing either the risk of going to prison for a long time versus a better deal in cooperation, he was willing to take the risk of a trial.

PageID #2517-18.

**<u>Testimony of Petitioner</u>**:

Petitioner testified that, in light of his confession to the charge, he agreed that his counsel should admit, on opening statement, Petitioner's guilt to the drug charge in Count 10, which carried a sentencing range of 5 to 40 years in prison. PageID #2439. He also acknowledged that Edwards advised him that conviction after trial could result in a sentence of twenty to twenty-five years incarceration. PageID #2546. At the beginning of plea negotiations, Petitioner asked Edwards to request dismissal of the § 924I charge, and he "would plea out to the six years [on Count 10] and the two-point gun enhancement." PageID #2534-35. Petitioner initially testified that he was willing to accept a sentencing range of 108 to 135 months incarceration based on an offense level of 30 and a criminal history category of II. PageID #2533-34. He later testified,

however, that he rejected such an offer and directed Edwards to secure an offer with a sentencing range of 87 to 108 months incarceration.  PageID #2543.  He explained at the evidentiary hearing that, at the time, he thought that only Clarence Bell and Howard Boddie would testify against him; he did not realize the strength of the government's case nor did he understand that his wife could and would testify against him.  PageID #2544-45.  Petitioner rejected the government's last plea offer, *i.e.*, a plea of guilty to Count 1, which was punishable by a prison term of ten years to life, and Petitioner's agreement to testify against Fenderson,  PageID #2535, because he did not want to enter prison "labeled as a snitch in fear of my life."  *Id.  See also* PageID #2547-48.

Petitioner was housed in the Franklin County Jail for six or seven months prior to trial. PageID #2527.  Clarence Bell and Anthony Boddie were also detained there and both insisted that they would not testify against Petitioner.  PageID #2528-29.  Petitioner told Edwards that neither Bell nor Boddie could hurt Petitioner at trial. According to Petitioner, Edwards never discussed any other prospective witness against Petitioner.  PageID #2529.

Petitioner knew that testimony from his wife could damage him.  He testified that Edwards assured him that spousal privilege would preclude her testimony.  PageID #2530. Petitioner expressly denied that either Edwards or the government's attorneys ever told him to expect his wife to testify against him at trial.  PageID #2532.  It was not until the actual trial that Petitioner realized that his wife would in fact testify against him.  PageID #2536.

Petitioner acknowledged that, at the time he rejected the government's last plea offer, he knew that his wife would testify against him; he nevertheless rejected the final offer because he did not want to testify against Fenderson.  PageID #2552-53.[10]

**Testimony of Assistant United States Attorneys Prichard and Affeldt**

Assistant United States Attorneys Timothy Prichard and Kenneth Affeldt were assigned at various times to the case against Petitioner.  PageID #2566.[11]  Prichard testified that every plea offer made to Petitioner contemplated a prison sentence of approximately ten years.  PageID #2568.  A reduction under U.S.S.G. § 5K1.1 might have been possible had Petitioner cooperated with the government.  PageID # 2568, 2574.  Prichard did not recall any willingness on Petitioner's part to accept a sentence of more than five years.  PageID # 2583. Moreover, the attorneys for the government were convinced that Petitioner was untruthful during his November 2006 attempted proffer; that fact, combined with the large quantities of drugs involved, persuaded the government's attorneys that a sentence of less than 10 years was unwarranted. PageID #2569-70.  Once the trial began, moreover, the government attorneys were willing to resume discussions, but only if Petitioner were willing to cooperate against Fenderson.  PageID #2572.  When Petitioner answered a question in what was perceived to be a dishonest manner, the attorneys for the government ended those discussions.  PageID #2573.

Prichard also recalled that both Edwards and Petitioner had been told that Petitioner's wife was willing to testify against Petitioner.  PageID #2571-72, 2579.  "[W]e hoped that Mr. Richardson, hearing it from our mouths, that could have meant something to him, to avoid going

---

[10] In his January 23, 2012 affidavit in support of his motion to vacate, Doc. No. 358, Petitioner stated, "Had Mr. Edwards told me that my wife would testify against me, I would have accepted the Government's plea offer or I would have sought to enter an open plea of guilty under rule 11."  PageID #2062.  *See also* PageID # 2555-57.

[11] Assistant United States Attorney David Bosley was also assigned to the case but he was not called to testify at the evidentiary hearing.

to trial and avoid forcing, really, his wife to have to testify." PageID #2578.  Moreover, Ebony White's plea agreement, in which White generally agreed to cooperate with the government, the government's motion for a downward departure based on her substantial assistance, and her October 2006 sentence, were all available on the public record. PageID #2580-82.  *See United States v. Ebony S. White*, 2:06-cr-100(9)(S.D. Ohio), Doc. Nos. 49, 50, 71, 117, 119.[12]

Assistant United States Attorney Kenneth Affeldt recalled a meeting with Petitioner and Edwards in the courtroom in late November 2006, although he could not recall the details of that meeting.  Affeldt did recall a meeting with Petitioner, shortly after the start of the trial, in response to Edwards' representation that Petitioner was interested in pleading guilty.  PageID #2589.  Affeldt recalled that Petitioner pointed to a piece of paper on which was written, "five years," which Affeldt understood to be a request by Petitioner for a sentence of five years, which was unacceptable to the government.   PageID #2589-90. The only offer that remained outstanding at the time of trial was one that, in the absence of Petitioner's cooperation, contemplated a sentence in the ten to eleven year range;  should Petitioner cooperate, however, the government might have considered a reduction to eight years.  PageID #2590.

Affeldt also testified that Ebony White was the primary witness against petitioner.  Accordingly, any discussion of the evidence against Petitioner would have included her anticipated  testimony against him. PageID #2594.  "I got the impression he knew we had a strong case.  It's just that we couldn't agree on the years."  PageID #2595.

---

[12] Moreover, on October 19, 2006, the Court granted her attorney's motion to delay the execution of Ebony White's sentence based, in part, on the fact that she "is expected to be called as a prosecution witness in the trial of U.S.A. v. Alvin Fenderson, et al."  *Id.*, Doc. Nos. 124, 129.

## C.

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The standard for demonstrating a claim of ineffective assistance of counsel is composed of two parts:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). With respect to the first prong of the *Strickland* test, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. To establish the second prong of the *Strickland* test, *i.e.,* prejudice, a petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Because a petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, should the court determine that a petitioner has failed to satisfy one prong, it need not consider the other. *Id*. at 697.

A criminal defendant is entitled to the effective assistance of counsel during the plea negotiation process. *Lafler v. Cooper*, —— U.S. ——, 132 S.Ct. 1376 (2012).

> Having to stand trial, not choosing to waive it, is the prejudice alleged. In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution

> would not have withdrawn it in light of intervening circumstances),
> that the court would have accepted its terms, and that the
> conviction or sentence, or both, under the offer's terms would have
> been less severe than under the judgment and sentence that in fact
> were imposed.

*Id.* at 1385. The United States Court of Appeals for the Sixth Circuit has described the

obligations of defense counsel as it relates to advice during the plea negotiations stage as

follows:

> A criminal defendant has a right to expect at least that his attorney
> will review the charges with him by explaining the elements
> necessary for the government to secure a conviction, discuss the
> evidence as it bears on those elements, and explain the sentencing
> exposure the defendant will face as a consequence of exercising
> each of the options available. In a system dominated by sentencing
> guidelines, we do not see how sentence exposure can be fully
> explained without completely exploring the ranges of penalties
> under likely guideline scoring scenarios, given the information
> available to the defendant and his lawyer at the time.

*Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003) (citing *United States v. Day*, 969 F.2d

39, 43 (3d Cir.1992)).

> Supporting this duty is the concomitant obligation of conducting
> "reasonable investigations or [reaching] a reasonable decision that
> makes particular investigations unnecessary." *Strickland*, 466 U.S.
> at 691, 104 S.Ct. 2052. "Counsel cannot responsibly advise a client
> about the merits of different courses of action, [and] the client
> cannot make informed decisions, ... unless counsel has first
> conducted a thorough investigation...." *Dickerson v. Bagley*, 453
> F.3d 690, 694 (6th Cir.2006) (noting that such an investigation
> "should begin as quickly as possible" in order to aid in plea
> negotiations (internal quotation marks omitted)). The Sixth
> Amendment does not require that counsel provide an absolutely
> correct assessment of the comparative risks of a guilty plea versus
> a trial, but the Supreme Court has "recognize[d] that counsel must
> at least be aware of such risks, especially where the lack of
> awareness directly impacts the reasoning behind whatever advice
> is provided."

*Titlow v. Burt*, 680 F.3d 577, 587 (6th Cir. 2012)(citation omitted).

A substantial disparity between the terms of a plea offer and the potential sentence constitutes strong evidence that it is reasonably probable that a properly advised defendant would have accepted the plea offer. *Id.*, at 552 (evidentiary hearing warranted as to whether defendant would have pleaded guilty where attorney failed to convey plea offer of five years and defendant sentenced to 156 months) (citing *Magana v. Hofbauer*, 263 F.3d 542, 552–53 (6th Cir. 2001) (difference between ten and twenty year sentence significant)).

However, an attorney's failure to insist that his client accept the government's plea offer does not constitute constitutionally ineffective assistance.

> The decision to plead guilty—first, last, and always—rests with the defendant, not his lawyer. Although the attorney may provide an opinion on the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the ultimate decision of whether to go to trial must be made by the person who will bear the ultimate consequence of a conviction.

*Smith v. United States*, 348 F.3d at 552.

Petitioner alleges that, but for the constitutionally unreasonable advice of his defense counsel, he would not have proceeded to trial but would have accepted the government's plea offer. In order to prevail on this claim, Petitioner must establish that "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 132 S.Ct. at 1384.

The sole issue addressed at the evidentiary hearing is Petitioner's claim that, had his attorney advised him of the strength of the government's case and that his wife, Ebony White,

would testify against him, he would not have proceeded to trial and would have instead entered a guilty plea. To the extent that Petitioner now attempts to raise additional claims or theories, those claims or theories are time-barred, *see Order*, Doc. No. 399, and will not be addressed further.

Petitioner insists that he would have accepted an offer to plead guilty to Count 10 of the *Superseding Indictment*, which carried a mandatory minimum of five (5) years, had he been advised that his wife would testify against him and that spousal privilege would not have foreclosed that testimony. *Petitioner's Memorandum in Support,* Doc. No. 407; *Petitioner's Reply*, Doc. No. 409. In support of that contention, Petitioner suggests that Edwards did not research or discuss the issue of spousal privilege with Attorney David Graeff until December 12, 2006, *i.e.,* shortly before trial and after the expiration of the earlier plea offer that was not conditioned on Petitioner's testimony against Fenderson. *See Petitioner's Memorandum in Support,* PageID #2616; *Petitioner's Reply*, PageID #2628. Petitioner also suggests that Edwards did not obtain a copy of Ebony White's plea agreement until shortly before trial, *Petitioner's Memorandum in Support,* PageID #2620, and notes that none of Edwards' letters or memoranda to his file refer to Ebony White as a witness against Petitioner. *Id.* He explains that he did not accept the government's final plea offer, which required a plea of guilty to Count 1 of the *Superseding Indictment* and Petitioner's testimony against Fenderson, because he did not want to testify against his cousin and because that offer involved a mandatory minimum sentence of ten years. *Id.* at PageID ##2621; *Petitioner's Reply*, PageID #2628. According to Petitioner, the record establishes that he would have accepted a sentence in the guideline range of 87 to 108 months incarceration had Edwards advised him that his wife would testify against him.

Petitioner asks that the government's second plea offer be reinstated.  *Petitioner's Reply*, PageID #2628.

The Court rejects, as unworthy of credit, Petitioner's testimony that he did not realize until the day of trial that his wife would be a witness against him and that, had he known this fact earlier, he would have accepted the government's earlier offer.  As an initial matter, Petitioner's testimony in this regard is inconsistent with the testimony of Edwards, Prichard and Affeldt that Petitioner understood that his wife could and would testify against him at trial.  The Court credits the testimony of those witnesses over that of Petitioner.  Moreover, because Petitioner at all relevant times acknowledged his guilt to Count 10 of the *Superseding Indictment*, it is unclear why his wife's testimony was at all relevant to his acceptance of an offer that contemplated a plea of guilty to Count 10.  Furthermore, Petitioner's testimony at the evidentiary hearing was inconsistent with other evidence in the record in certain respects.  For example, although Petitioner testified that he rejected the government's final offer because*, inter alia*, he would not testify against Fenderson, Edwards' December 19, 2006, contemporaneous memorandum to the file indicates that Petitioner was willing to cooperate with the government, but only if he got a better deal.  *Petitioner's Exhibit E18-20,* PageID #2357.  As noted *supra*, Petitioner's affidavit in support of his *Motion to Vacate* made no mention of any reluctance on Petitioner's part to testify against his co-defendant.  In short, the credible evidence establishes that Petitioner's decision to reject the government's offers was not because his attorney failed to advise him of the strength of the government's case against him or that his wife would testify against him at trial.

Petitioner has failed to establish that, but for the inadequate advice of his attorney, he would not have proceeded to trial but would have instead pleaded guilty.  Petitioner's claim of ineffective assistance of counsel during plea negotiations is therefore without merit.

## II.

The *Motion to Vacate* also alleges that Petitioner was denied the effective assistance of counsel because his attorney failed, before the trial court and on appeal, to challenge Count 11, which charged possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).   Petitioner specifically complains that this count was impermissibly constructively amended by the evidence and by a jury instruction that permitted the jury to use the drug conspiracy charge in Count 1 of the *Superseding Indictment*  as a predicate drug offense, even though the *Superseding Indictment* did not list that count as a predicate offense in Count 11.[13]

The United States Court of Appeals for the Sixth Circuit held that the evidence relating to Count 11 was constitutionally sufficient to sustain Petitioner's conviction:

> Richardson's wife, Ebony White, testified that she removed two firearms from the home. These firearms were recovered during a traffic stop of Kimyada Richardson. Both firearms, a 9mm Ruger pistol and a .40 caliber Taurus pistol, were recovered with magazines and ammunition. White testified that one of the firearms came from a kitchen cupboard. White also indicated that the cupboard was directly above the area in which cocaine powder was cooked into cocaine base. Accordingly, the gun was "strategically located" in close proximity to the drug activity, and as the gun was loaded, it was able to be quickly used during a drug transaction. Furthermore, the gun was removed from the home following Richardson's order to his wife, given after he knew that a drug arrest had been made. It is apparent from that fact that Richardson or White firmly believed that the gun was directly related to the drug activity. Considering these facts in a light most favorable to the Government, there was more than sufficient evidence to support Richardson's firearm conviction.

---

[13] Respondent contends that Petitioner has waived this claim for federal habeas corpus review because trial counsel failed to object to the jury instructions and because the issue was not raised on direct appeal. However, because Petitioner presents the claim as a claim of ineffective assistance of counsel, the claim is properly addressed and considered in these proceedings under 28 U.S.C. § 2255.  *See Massaro v. United States,* 538 U.S. 500, 504 (2003).

*United States v. Richardson*, 352 Fed.Appx. at 51.  In view of the foregoing, any claim that Petitioner's attorney should have requested dismissal of this charge based on the prosecution's failure to establish the elements of the offense is without merit.

Petitioner also alleges that Count 11 of the *Superseding Indictment* was impermissibly constructively amended because the jury instructions permitted a finding of guilt on that charge if it found Petitioner guilty of the drug trafficking crime charged in Count 1.  Where the terms of an indictment are altered by the presentation of evidence and jury instructions "'which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment,'" the indictment has been constructively amended – a result that is deemed "'prejudicial per se.'" *United States v. Latham*, 358 Fed.Appx. 661, 664 (unpublished), 2009 WL 4927964 (6th Cir. Dec. 22, 2009)(quoting *United States v. Thomas,* 11 F.3d 620, 630 (6th Cir. 1993))(internal citations omitted).  Because there was no objection to the jury instructions in this regard, Petitioner's claim would have been reviewed on appeal only for plain error, *i.e.,* only for error that is "plain" and which affected Petitioner's "substantial rights."  *Id*. (citing *States v. Budd*, 496 F.3d 517, 528 (6th Cir.  2007)).

Count 11 of the *Superseding Indictment* charged as follows:

> On or about December 7, 2005 in the Southern District of Ohio, the defendant, DEDRICK L. RICHARDSON, aka "Train", did knowingly possess one or more firearms, that is, a Taurus, .40 cal. pistol, serial #SVC58388; a Ruger, 9mm pistol, serial #30868034; and a Smith and Wesson, .38 cal revolver, serial #J570272, in furtherance of a drug trafficking crime, that is, conspiracy to distribute and possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1).
>
> In violation of 18 U.S.C. §§924(c)(1)(A)(i) and §2.

*Id.*, Doc. No. 122, PageID #419.  Count 1 of the *Superseding Indictment* charged Petitioner in relevant part as follows:

> From on or about July 1, 2005, through and including March 20, 2006. . . the defendants. . . did knowingly, intentionally, and unlawfully combine, conspire, confederate and agree with each other and with diverse other persons, both known and unknown to the grand jury, to manufacture, to possess with the intent to distribute, and to distribute, more than 50 grams of a mixture or substance containing a detectable amount of cocaine base, commonly referred to as crack. . . .
>
> It was a part of the conspiracy that DEDRICK L. RICHARDSON. . . would "cook" powder cocaine into cocaine base, commonly referred to as crack, at 8465 Papillon St., Reynoldsburg, OH and at other diverse locations.
>
> ***

*Id.* at PageID #413-414.  Count 10 of the *Superseding Indictment* charged Petitioner with possession with intent to distribute cocaine:

> On or about December 7, 2005, in the Southern District of Ohio, defendant, DEDRICK L. RICHARDSON, aka "Train", did knowingly, intentionally, and unlawfully possess with the intent to distribute over 500 grams of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.
>
> In violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(B)(ii) and 18 U.S.C. §2.

*Id.* at PageID #418.  The jury instructions on Count 11 provided in relevant part as follows:

> Count 11 of the Superseding Indictment charges that on or about December 7th, 2005, in the Southern District of Ohio, defendant Richardson knowingly and intentionally possessed one or more firearms in furtherance of a drug trafficking crime, that is, conspiracy to distribute and possession with intent to distribute cocaine.
>
> ***
>
> You are instructed as a matter of law that the offense of conspiracy to distribute or possess with intent to distribute cocaine charged in Counts 1 and 9 and possession with intent to distribute charged in

> Counts 10 and 12 are drug trafficking crimes for which a defendant may be prosecuted.
>
> The government's theory in this case is that the offense of conspiracy to distribute or possess with intent to distribute cocaine charged in Counts 1 and 9 or the offense of possession with intent to distribute charged in Counts 10 and 12 constitutes the drug trafficking crime alleged in Count 11. Therefore, . . . if you unanimously find that the government has proved beyond a reasonable doubt that the defendant Richardson is guilty of one or more . . . of the drug offenses charged in Counts 1, 9, 10 or 12 of the Superseding Indictment, then the government has also provided [sic] the first element of Count 11 beyond a reasonable doubt, and you must go on to consider whether the government has provided [sic] the remaining elements of Count 11.

*Trial Transcript*, Doc. No. 274, PageID #1647-49.

Petitioner contends that Count 1 cannot constitute a predicate offense for his possession of a firearm in furtherance of a drug trafficking crime, as charged in Count 11, because Count 11 refers to "conspiracy to distribute and possession with intent to distribute cocaine," not *crack* cocaine.[14] However, as noted *supra*, Count 1 specifically alleged that Petitioner's role in the conspiracy was to "'cook' powder cocaine into cocaine base, commonly referred to as crack. . . ." Cocaine base, or crack cocaine is a form of cocaine. *See United States v. Jernigan*, 93 Fed. Appx. 775, 776-77 (6th Cir. 2004); *United States v. Goode*, 143 F.Supp.2d 817, 820-81 (E.D. Mich. 2001). In any event, Count 10 of the *Superseding Indictment*, which charged possession with intent to distribute "cocaine" on December 7, 2005, and upon which the jury returned a finding of guilt, was also presented to the jury as a predicate offense for Count 11. It therefore cannot be said that Count 11 of the *Superseding Indictment* was so constructively amended as to create "a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment. . . ." *United States v. Latham*, 358 Fed.Appx. at 664. It follows, then, that the failure of Petitioner's counsel to object to any alleged constructive

---

[14] It must be noted that Counts 9, 10 and 12 of the *Superseding Indictment* refer to "cocaine," not to crack cocaine.

amendment of Count 11 was either error or worked to Petitioner's prejudice. Petitioner has therefore failed to establish the ineffective assistance of either his trial counsel or his appellate counsel on this basis.

**WHEREUPON**, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.


                                                    *s/  Norah McCann King*
October 3, 2013                                      Norah McCann King
                                                    United States Magistrate Judge